The plaintiffs, Mike Casey; his wife, Jane Casey; and his father, Jerry Casey, appeal from a summary judgment entered in favor of the defendants, Emmett Estes and his daughter, Jacqueline Marbut.[1]
On December 16, 1991, the Caseys were injured by a flash fire that erupted when Mike and Jerry Casey attempted to light a propane gas space heater located in the bathroom of a house that Mike and Jane Casey were renting from its owner, Emmett Estes. Mike and Jane Casey sued Estes and Marbut, *Page 847 
alleging that they had suffered injury because, they said, Estes had misrepresented to them that the gas system was safe. They sought damages for personal injuries and loss of consortium they claimed had been caused by the flash fire. The Caseys amended their complaint to add a premises liability claim, alleging that Estes, as their landlord, was liable for their injuries and that Estes had negligently inspected the gas line in the rental house. Blue Cross and Blue Shield of Alabama, the Caseys' insurer, moved to intervene, and the trial court granted the motion. The Caseys then amended their complaint to add Jerry Casey as a plaintiff; he sought damages for his personal injuries under the premises liability and negligent inspection claims.
The defendants moved for a summary judgment on all counts; the trial court granted the motion, without specifying its reasons. The Caseys appeal from the summary judgment as to the premises liability and negligent inspection claims.
On a motion for a summary judgment, the movant has the burden to make a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. See, also, Willingham v. UnitedInsurance Co. of America, 642 So.2d 428 (Ala. 1994), and the cases cited therein. Until the moving party has made a prima facie showing that there is no genuine issue of material fact, the burden does not shift to the opposing party to establish a genuine issue of material fact. Willingham, supra. This case was filed after June 11, 1987; accordingly, the "substantial evidence rule" applies to the ruling on the motion for summary judgment. In order to defeat a properly supported motion for summary judgment, the nonmovant must present substantial evidence creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Betts v. McDonald's Corp., 567 So.2d 1252
(Ala. 1990). "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
Estes built the rental house himself about 15 years ago. It was originally heated by only a fireplace. He later installed a heating system that consisted of three space heaters and a propane gas tank located outside the house, with a main fuel line running from the tank into the house, where it provided fuel to the heaters. Estes's granddaughter and her husband, Donna and Scott Smith, later moved into the rental house and replaced the tank and the three-year-old space heaters with two new space heaters. Scott Smith installed a second fuel line, which ran from the main line to provide fuel to a gas clothes dryer, which was located in the bathroom. This second line, which was above-ground and clearly visible, was connected to the main line and turned at a right angle to the dryer connection.
The Smiths lived in the house for three years and while there had no problems with the propane gas system. When they were preparing to move from the house and the Caseys were preparing to move into the house, Scott Smith disengaged the second gas line, which supplied the gas dryer, at the dryer connection. According to Smith, he also disengaged the other end of the second fuel line from the "T" and capped it, so that the gas line leading to the dryer was not attached to the fuel tank outside. However, that fact is disputed.
After Donna and Scott Smith vacated the premises, Estes and Scott Smith visually inspected the gas pipes; they discovered no defects. Scott Smith performed what is known as a "soap test" on the fittings of the space heaters. A "soap test" is performed by spraying suds around the heater fittings and watching to see if bubbles develop; bubbles would indicate a gas leak. Scott Smith also lit a match under the space heaters to check for leaks, but found none.
Mike and Jane Casey rented the house in May 1991. At that time, Scott Smith told Mike Casey that he could use the propane gas remaining in the tank outside, if he wanted to light the two space heaters. However, Estes did not discuss the gas system at any time with the Caseys, nor did he give them *Page 848 
permission to use the tank. The Caseys installed an electric dryer and installed a large wood-burning stove to heat the house.
On December 19, 1991, the Caseys decided to light the two space heaters. They asked Jerry Casey to come over and help them turn on the gas line at the tank. Jerry Casey went outside and turned on the gas from the tank, then came inside and lit the space heater in the bedroom; that heater was fueled by gas from the main line. He and Mike Casey then went into the bathroom to light the heater there, which was also fueled by gas from the main line and not from the secondary line that had formerly fueled the gas dryer. When Jerry struck a match, a flash fire erupted and flamed out into the bedroom, injuring all three Caseys.
The Caseys first allege that this evidence creates a jury question as to whether Estes, as their landlord, was liable for their injuries. However, in the absence of a covenant to repair the defect that caused the injury, a lessor is liable only for injuries resulting from latent defects known to the lessor at the time of the leasing and which the lessor concealed from the tenant. Allen v. Knotts, 514 So.2d 955 (Ala. 1987). A landlord has no duty to inspect for latent defects, i.e., defects that are hidden or concealed, or which can not be discovered by a reasonable inspection. Collier v. Duprel, 480 So.2d 1196
(Ala. 1985); Stallings v. Angelica Uniform Co., 388 So.2d 942
(Ala. 1980).
There was conflicting evidence as to whether the open-ended secondary gas line was attached to the main fuel line on the night of the explosion. Scott Smith testified that when he was taking out the gas dryer he disengaged the second fuel line from the main line, thereby cutting it off from the propane. Jerry Casey testified that, two weeks after the fire, he inspected the pipes and saw that the secondary line was attached to the main line leading to the propane tank. However, we do not conclude that this issue of fact is material, because the open line from the gas tank into the bathroom may not be characterized as a latent defect.
The undisputed evidence shows that the gas line was highly visible on the outside of the house at the tank, as well as on the inside of the house in the bathroom. The Caseys were aware that the Smiths had removed the gas dryer, leaving one gas line disconnected inside the house, and they had even installed their own electric dryer where the gas appliance had been located. Estes made no representation as to the condition of the gas lines, or their safety, and there is no evidence that he knowingly concealed the disengaged gas line from the Caseys.
The Caseys argue that Estes undertook to inspect and repair the gas line before they took possession of the house and that he was negligent in doing so. They point out that, although a landlord is under no duty to inspect for and repair latent defects, a landlord who voluntarily undertakes such a duty is liable for injuries proximately caused by the landlord's negligence in inspecting and repairing. Dunson v. FriedlanderRealty., 369 So.2d 792 (Ala. 1979). As we have noted, though, the disengaged gas line was not a latent defect. Moreover, the exception to the general rule of no duty applies only to repairs made after the relationship of landlord and tenant begins. Baker v. Wheeler, Lacey Brown, Inc., 272 Ala. 101,128 So.2d 721 (1961). The record shows that Estes inspected the gas lines before leasing the premises to Mike and Jane Casey, not after the contractual relationship of landlord and tenant had been established. Accordingly, the exception is inapplicable under these facts.
Because Estes had no duty to repair or warn the Caseys about the disengaged gas line, the trial court properly determined that, as a matter of law, he has no liability for their injuries. In view of this, we pretermit discussion of the other issues raised. The trial court's judgment is affirmed.
AFFIRMED.
ALMON, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Although Jacqueline Marbut was named as a defendant and is named as an appellee here, the record does not indicate that she had any connection with the events that led to this lawsuit. *Page 849