RICHARD L. HOLMES, Retired Appellate Judge.
Brandon Rhodes (tenant) appeals from a summary judgment in favor of Winter Farms, Inc. (landlord), and Don Smith Realty, Inc. (management company). This ease is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Our review of the record reveals the following pertinent facts: The tenant occupied the entire top floor of a two-story apartment house. The only means of ingress and egress to the tenant’s top floor apartment was an exterior stairwell, which accessed his apartment only.
On February 18,1994, the tenant sustained multiple injuries to his ankle and back when the iron railing surrounding the landing of his apartment collapsed, causing him to fall to the ground floor. Thereafter, the tenant filed a complaint against the landlord and the management company under the “common area” theory of negligence. The tenant alleges that both the landlord and the owner of the management company represented that they would be responsible for maintaining the premises in a reasonably safe condition and that they breached their duty in failing to do so.
On October 10, 1995, the trial court, without specifying its reasons, entered a summary judgment in favor of the landlord and the management company. Thereafter, the tenant filed a post-judgment motion, which was denied.
The tenant appeals.
Rule 56(e), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where there exists no genuine issue of any material fact and the movant is entitled to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie case, showing that no genuine issue of a material fact exists, then the burden shifts to the non-moving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
Furthermore, in determining whether substantial evidence exists to defeat a summary judgment, the reviewing court must view the evidence in a light most favorable to the nonmoving party. Specialty Container Mfg., Inc. v. Rusken Packaging, Inc., 572 So.2d 403 (Ala.1990).
Here, in support of their motion for a summary judgment, the landlord and the owner of the management company contend (1) that the condition of the railing was a latent defect, which neither had knowledge of or any duty to inspect; and (2) that the railing/stairwell was not a common area, which was under their control to either inspect or maintain.’ Both testified that they did not know of any defects in regard to the railing and did not make inspections for any defects.
*1252 It is well settled that “in the absence of a covenant to repair the defect that caused the injury, a lessor is liable only for injuries resulting from latent defects known to the lessor at the time of the leasing and which the lessor concealed from the tenant.” Casey v. Estes, 657 So.2d 845, 848 (Ala.1995). Latent defects have been defined as those “defects that are hidden or concealed, or which can not be discovered by a reasonable inspection.” Casey, 657 So.2d at 848.
Furthermore, “[a] lessor’s liability under [the control] theory is based upon his failure to exercise reasonable care when such exercise would have disclosed a dangerous condition and the risk involved, and the lessor could have made the condition safe.” Osborn v. Brown, 361 So.2d 82, 88 (Ala.1978).
In order to support his contention that the • upkeep and the maintenance of the metal railing was under the landlord’s control, the tenant testified that he and his roommate signed a lease agreement, which contained a provision that the landlord would be responsible for maintaining the property. In other words, the tenant contends that the lease contained a covenant to repair. The tenant and his roommate further testified that a couple of months after moving into the apartment, they received a note -thumbtacked to their door, which stated that Don Smith Realty, Inc., the management company, would be taking over the management of the apartment complex, including any and all maintenance problems. The letter allegedly listed the management company’s telephone number to call if repairs were needed.
The tenant and his roommate both testified that they notified the management company on several occasions regarding specific problems and that someone came to repair them each time. The tenant and his roommate also noted that they quite often saw a maintenance person working on the premises. The landlord testified that he employed a maintenance man, but that he cut the grass only.
The testimony that was given on behalf of the management company is quite conflicting. Don Smith, the owner of the management company, by affidavit, stated that he “undertook the management of the property ... for the purpose of renting it to tenants .... I showed the property to [the tenant] and a co-tenant_ On that occasion, we visited the property and I walked upstairs with the prospective tenants and showed .them through the property.”
Smith’s deposition testimony was a direct contradiction of his affidavit testimony. According to his deposition testimony, Smith denied ever showing the property to the tenant and his roommate, or that he had them sign a lease. Mr. Smith testified that any agreement between his company and the tenant was a verbal agreement. Smith further testified that he did not represent to the tenant or his roommate that his company would be responsible for any repairs and maintenance of the apartment. Smith also denied that he ever sent anyone out to make any repairs in the apartment because, as he says, that was not in his job description.
However, Patsy Coble, an employee and part owner of Coble’s Metal Works, by affidavit, testified that after the tenant fell, someone from Don Smith Realty contacted her company to repair the railing at the top of the stairwell. In fact, the receipt, presented by the tenant, shows that the bill for the repairs was paid by Don Smith Realty. Smith, however, denied ever doing anything associated with the property, other than collecting the monthly rent. This testimony and evidence, in and of itself, tends to indicate that the management company did retain some control over the apartment complex.
The tenant, in order to support his contention that the railing was negligently maintained, introduced the testimony of Tommy Bohannon, who repaired the railing after the accident. Bohannon testified that the iron railing was in very bad need of repair and that it had been neglected for quite some time, which presented the unsafe condition. The tenant also introduced the testimony of Owen Lilly, an expert, who testified that he inspected the broken railing and determined that the railing did not conform to the Southern Standard Building Code. Lilly further testified that the connections on the railing were rusted almost entirely and that the *1253 slightest amount of pressure would have caused the railing to collapse as it did.
The expert testimony presented here is clear that the building or code violation created an increased likelihood that anyone coming in contact with the railing surrounding the landing was in peril. This testimony also creates a question of fact as to whether a reasonable inspection by the landlord or the management company, assuming either had the duty, would have revealed the defect in the railing, which the landlord and management company contend was a latent defect.
The landlord and the owner of the management company strongly contend that the exterior stairwell/landing was not under their control since it was not a common area shared by all tenants. Since there is no Alabama ease law on point on whether an exterior stairwell accessing one apartment only is considered a common area, we quote a pertinent part of the following annotation, Landlord’s liability for injury or death due to defects in exterior stairs, passageways, areas, or structures used in common by tenants, 26 A.L.R.2d 479 (1952):
“The fact that at the particular time in question the stairs upon which the plaintiff was injured were in fact used by only one of the tenants has generally been held not to be conclusive upon the issue of retention of control, the courts generally holding that the adaptability and design of the stairs for common use, rather than the actual use made, is determinative.”
Clearly, when viewed in a light most favorable to the tenant, the record is replete with evidence indicating the existence of factual questions for a jury, thereby precluding a summary judgment. Additionally, we would note that a summary judgment is rarely appropriate in negligence and personal injury cases. Cabaniss v. Wilson, 501 So.2d 1177 (Ala.1986).
Consequently, we reverse the judgment of the trial court and remand the case to the trial court for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L.
HOLMES while serving on active duty status as a judge of this court under the provisions of § 12 — 18—10(e), Code 1975.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and . CRAWLEY, JJ., concur.